Good morning, Your Honor. Tony Faramani on behalf of Mr. Royal. There's very little doubt, Your Honor, that what happened in this case should result in a grant of habeas relief. And that's quite simple, Your Honor, because we have a constitutional violation. We have the California Court of Appeal finding that the admission of that evidence not only was an error under state law, but it was a manifest of injustice. That's the standard. Do we have a constitutional violation? We definitely have an evidentiary violation. Does it rise to the level of a constitutional violation? Your Honor, it does. We have cases, for example, Kip v. Davis, a case from this circuit that talks about admission of evidence that renders a trial fundamentally unfair is a violation of due process. That's the claim that we have. It's the violation of his due process rights for the admission of that evidence, that improper admission of the evidence. And the California Court of Appeal found that under state law, it was improper admission of evidence, and the court abused its discretion. Did you raise the due process fundamental unfairness in California? I thought you had only raised the state evidentiary issue. Your Honor, the— And here's the Sixth Circuit claim, the Sixth Amendment claim, not the due process claim. Yes, Your Honor, I agree. The lawyer who handled the case at the direct appeal, that lawyer did not squarely raise the issue, the due process issue. Raised it in a prejudice analysis by trying to persuade the California Court of Appeal that the standard on the Chapman should apply because it is, in fact, a constitutional violation. But the California Court of Appeal found—the California Court of Appeal, in fact, never addressed the constitutional violation. It looked at the issue— Sorry, when you're saying constitutional. Now you're meaning due process. Yes, Your Honor, due process. I agree with Your Honor. If they didn't address it because you didn't raise it, then isn't it not exhausted? Well, Your Honor, they—well, two responses to that, Your Honor. Number one, he did raise a constitutional question, and the California Court of Appeal found that there was no constitutional violation. They did analyze it under the Sixth Amendment. You're correct, Your Honor, but they did find ultimately that this does not rise to a level of constitutional violation. The second response to that, Your Honor, would be that at no time during the proceedings in this court has anyone ever raised the issue of procedural default. Everyone has always assumed that the case, including the district court, District Judge Hayes, that the case is proceeding under the premise that this was a violation of your due process rights. The admission of that evidence was a violation of due process. And what the California courts have done is they analyzed the issue under state law, and they never addressed the harmless standards. They addressed it by using the Watson, people versus Watson, rather than Chapman. So the California state courts are not even entitled to deference for that matter, Your Honor, because they never addressed the question before the court, which is a due process. And number two, the harmlessness that they did address— Are you saying that AEDPA wouldn't apply? AEDPA would not apply, Your Honor, and the reason why it wouldn't apply is because they never adjudicated the issue. They did adjudicate harmlessness, but under a different standard, a much higher standard than Chapman, which we know is contrary to clearly established law. So cases after cases— How about on just the existence of the constitutional violation in the first place? Is that governed by AEDPA? It isn't, Your Honor, because they find—they don't address the constitutional question. They say, we find no constitutional violation. So if they—in a way, you can say they addressed a Sixth Amendment question, Your Honor, and I think they're interrelated with one another. The way they were perceiving this case or the way they were analyzing it was there were so many different wrongs that happened in this case, including that this particular witness, L.N., she never testified at the second trial. At the first trial, she did testify, and we had a hung jury, 9-3. Second trial, she doesn't testify at all. She demands money. She demands immunity. She doesn't get it, so she runs away. She doesn't testify. So the jury had a cold record, someone sitting up there and reading from the record. What about—I mean there was other—there were a bunch of claims here. Only one of them is before us. Yes, Your Honor. And so there's all this other evidence that would place—that indicated that your client had committed the murder. So is this even material, this issue that we're talking about? Absolutely, Your Honor, because there was no evidence that put him at the scene. There was none. There was no forensic evidence. What about some of her other testimony, right? Some of her testimony you would knock out through this theory, but not all of it. Well, her testimony, the ones other than the improper admission of this evidence, all the other testimonies that she gave, they were uncropped. Not only were they refuted by the father, the stepfather, and the mother. Basically what she said was taking out the improper admission of that evidence, taking out the evidence that was improperly admitted, and just focusing on what she said. She says that he came into the car and he said he murdered someone. Well, there are two people sitting in that car, and those two people testified. The mom and the stepfather, and they both denied it. And they were very credible witnesses, Your Honor. Sure, there was some testimony that they had maybe misrepresented some of the facts when they were first interviewed by the police, but they had legitimate reason for that. What about the cell phone evidence and the shotgun shells? Your Honor, the cell phone evidence, there was no evidence that put the cell phone in my client's hands, Your Honor, in a panelist's hands. None whatsoever. So the cell phone could have been carried by just anyone. It could have been carried by L.N., by the offending witness here. So the cell phone does not put my client. I'm trying to remember the exact set of calls, though. The cell phone was calling the victim, but wasn't the cell phone also calling your client's family members? No, there were. Or other people who wouldn't really make sense for it to be anyone else? No, Your Honor, because what happened was there were contacts between the victim and the cell phone that belonged to my client. But we don't know who was actually talking on that cell phone. But I'm just saying, weren't there other calls interspersed to people who it would have made sense for it to be your client? Afterwards, Your Honor, there was another set of calls that were made to the home after the killing. So at that time, again, it would make sense for her to have been making those phone calls as well, because what she does, and this was brought out in my client's testimony, she says that he called the house, talked to the mom, and then there was subsequent phone calls back and forth between the same lines and a different line. There were two lines in that house, Your Honor, one belonging to L.N. and the other one belonging to the parents. And all those phone calls could have been made by L.N. There's no indication that they had to have been made by my client. And in fact, Mr. Royale – Is there any evidence that L.N. made the calls? Or is this a theory? But what would support that? Well, it would support it, Your Honor, because the calls after the murder, Your Honor – are those the calls you're referencing? Frankly, any of the calls. I mean, if your position is that L.N. might have made the calls, I guess on the theory that what? She was paid to have sex with the victim, and that would be the alternative theory? She was setting it up. Yeah, she was setting it up. That's what she did. So she was setting it up, and this was a younger gentleman, the victim. He was sort of a womanizer, if you will, so he did date multiple women. So it's quite plausible, Your Honor, that those phone calls could have been made by L.N. to set up the – But is there evidence that would support that? There is no evidence one way or another, Your Honor. There is no evidence that my client picked up the phone and called, and there's no evidence that she didn't. So we don't know, and the prosecutor or the California Court of Appeal does not rely on the phone calls at all because they know they can't put the phone in Mr. Royale's hands, and there is no evidence whatsoever at the scene of the crime that would tie him to the actual scene. None. None whatsoever, Your Honor. So it could have been anybody at that scene. What we do know is that there were three women in a car at the crime scene at the time of the murder, but we know that Mr. Royale was nowhere near there except for the cell phone, which admittedly, Your Honor, the number did belong to him, but we have evidence that that cell phone was being used not just by him, by her as well, and multiple other people because of the business he was in, which was printing business, and he would make cold calls to get clients in. I thought he was also in the business of dealing drugs or being an intermediary for drug dealing. He wasn't. The victim was, Your Honor. Yeah, but he was more of a woman as a pimp, which he admitted at trial, Your Honor, and he did testify at the first trial as well, and the only person who didn't testify was Ellen, whose testimony came in, whose testimony on cross-examined, Your Honor, to the cops, to the police during the interrogation, knowing the issue of reliability whatsoever they came in. Okay, we've taken you over your time, but let's put two minutes on the clock for some additional time for rebuttal. I appreciate that, Your Honor. Thank you very much. Thank you, Mr. Fermani. Thank you. Good morning, Your Honors, and may it please the Court. Christopher Beasley, Deputy Attorney General. On behalf of the respondent, I'd like to start where Judge Boggs turned at the very beginning with the question of is this even an exhausted claim if we're going down the rubric of due process, and the answer is no. It is not an exhausted claim if we're talking under the rubric of due process. The way that this claim was presented at all times in the California Court of Appeal, in the Supreme Court of California for the petition for review, and even framed in the district court was as a confrontation clause violation under the Sixth Amendment. So to flip it over in this court to a due process violation really is not the same claim, and it is unexhausted. How different is it really? I mean, it's the same evidence. It's a theory of unfairness under the Constitution. In some ways, that's correct. But confrontation, the whole idea with confrontation is the ability to cross-examine the witness that is there and to confront that person, and that was actually vindicated in this case because as the State Court of Appeal found, this witness was fully cross-examined in the first trial. Her credibility was tested. Her biases were tested. Her lack of recall was tested. All of the things that confrontation is all about and to protect and vindicate, that was present in the first trial. And so the confrontation clause violation doesn't exist here. Now, setting that aside, just setting aside that fine, we'll accept that due process is similar enough to a confrontation clause violation, we still don't have here that violation of the Constitution that rises to the level of a fundamental unfairness. Jamal v. Van Kamp is really on point in this case. This is a case out of this court back from 1990s. And in that case, the State Court of Appeal found that there was a state evidentiary law violation with the admission of a whole cache of money in the trunk of the defendant. It was a drug case. And this evidence shouldn't have come in because there was nothing really tying that money to the drugs. So the California State Court of Appeal found that this was irrelevant and it was inadmissible. This court then had to determine, does that rise to the level of a constitutional violation? And this court said, presence or absence of a state law violation is largely besides the point when addressing whether there's been a constitutional violation and went on to find that there was no fundamental unfairness. There were, in fact, some reasonable inferences that could be drawn from the money that was found in the trunk because the defendant was a known drug dealer. But what is your position on whether AEDPA applies to any or all of this? AEDPA absolutely applies to all of this. Absolutely applies. The question really before this court is, was the California Court of Appeal's conclusion that there was no constitutional violation contrary to or based upon an unreasonable application of clearly established U.S. Supreme Court authority? So in making that argument, are you just assuming that the confrontation clause and the due process are the same? I mean, you started your argument by saying this isn't exhausted, but now you're saying they did answer it. Right, right. So what I'm saying is, even if we were to set aside, I'm not saying that they're the same. I'm saying that the actual claim was confrontation under the Sixth Amendment. That's the claim that is exhausted. That was what was presented. That right has been vindicated. But even if we were to set it aside and assume, for the purpose of this secondary argument that I'm making, that's what I'm saying. I'm setting that aside and making the assumption that, fine, the due process claim is exhausted. Even that would be subject to AEDPA because if we're talking in global terms, this is constitutional, we use vague language here instead of very specific and precise language. The California Court of Appeal addressed the constitutionality, and it would have recognized, okay, fine, it's a confrontation clause violation. If he's talking constitutional in broader terms, then also there's no due process violation here. We could make that assumption, but that's not how it was framed, and so that's why I'm trying to delineate it with what was actually presented to the California State Court of Appeal and then what he's now arguing here. So I'm saying if we assume that the confrontation is its own separate thing and then due process is its own separate thing and assume that it was exhausted, we still are okay here. I'm not sure what to make of the fact that you haven't really argued previously that this wasn't exhausted. Yeah, that is actually my fault. I should have been much more clear in my brief about that. I just proceeded down the path of looking with the Court of Appeal, State Court of Appeal did, addressing the confrontation issue and went with that. I should have been more explicit in saying, yes, this is the only claim before the court. So that is my fault. I should have briefed it more clearly. On the issue of essentially prejudice or harmlessness, why don't you give us the state's position on that issue? Once again, this is not – the royal has failed to demonstrate to the court that this error of state law, which we'd have to assume that it's a constitutional violation, had a substantial and injurious effect upon the verdict. And the reason for that is because there was, as Your Honor has already pointed out, lots of other evidence that was presented on this record. There was evidence from Ellen herself that was perfectly admissible, where she said that she remembered the defendant arming himself with a shotgun. She recalled that he had called her up from a grocery store and asked her to pick him up from the grocery store on the night of the murder. And then she recalled that he had told her that he had shot someone. This on top of the evidence from the cell phones, that the victim and the defendant had been talking to each other throughout the day, and then cell phone records showed that those two cell phones were moving closer and closer together and were within the same vicinity of each other at the time of the murder. So all of this evidence taken together would have gotten the jury to the same verdict. So this evidence that should have been excluded under state law, that evidence wouldn't have made any sort of difference in light of what we had here. And what is your response to the argument that Ellen actually had this cell phone? There's no evidence of that. That's just pure speculation. And speculation is clearly not enough. I also would add that this trial, although Ellen was not present to testify, all of the witnesses were the same, there was additional evidence in this trial to help Royal. The fact that Ellen refused to come and testify was blatantly before the jury, but then the various demands that she had made of the prosecution to come and testify, to try to extort $15,000 from the prosecution to testify, asking for immunity from prosecution, those kinds of things were all in front of the jury as well as additional evidence to help impeach Ellen. That evidence was never in front of the jury in the first trial. So this second trial actually had evidence that was even more helpful. Was there any other witness who testified about whether Royal had committed the murder? Affirmatively testified, so you had Ellen. Yeah. Was there anybody else? I don't think there was anyone else, but you also have the shotgun that was found in Royal's car that matched the same gauge and the same brand of the shotgun that was found. So it's a common shotgun? It is a common shotgun shell. However, the fact that the exact same gauge, the exact same brand, all those similarities, that raises a permissible inference that it was him. And the other witnesses your opposing counsel was explaining testified essentially that no, he had denied the shooting? He testified that he denied the shooting. His theory was that Ellen had done it. His theory was the other person did it. And so that's what he presented to the jury. The jury heard all of this, and the jury was able to make its own determination based upon the evidence that was there. So with that, I would ask this court to affirm the judgment of the district court, recognizing that there really was no constitutional violation here, and even if there were, it had no substantial and injurious effect upon the verdict. And with that, I submit. Thank you very much. Thank you. If I may, Your Honor, I just want to respond to Judge Friedland's question about the shotgun shells. Your Honor, those shotgun shells that were found in the car were actually admitted by NL, Ellen, to belong to her. That's part of the police report, that's part of the record. So that's with respect to shotgun shells. I did want to highlight again, Your Honor. Was that presented to the jury? It was not presented to the jury. That's one of his claims, that the defense counsel failed to present that to the jury. But she does admit, so when she gets pulled over in Arizona, she admits those shotgun shells are mine. Why wasn't that presented to the jury? Sorry, I'm a little confused about this. How do we know that, and why wasn't it presented to the jury? It wasn't presented to the jury, Your Honor, because one of his claims is actually grounded on ineffective assistance of counsel for failing to bring that to the jury's attention. So that wasn't a certified claim, but that's part of the record because the police report is indicating in the police report that she takes responsibility for the shotgun shells. But wholly aside from that, Your Honor, as Your Honor pointed out, those shotgun shells could have been from anywhere. It didn't have to be. They were very common shotgun shells. So it wasn't something where it was very, very direct and very precise. And, Your Honor, I do want to highlight, I mean, this is very important, because the California Court of Appeal, when finding that this was a state evidentiary error, says that this is the standard that they had to meet, Mr. Royale had to meet. It says, arbitrary, capricious, patently absurd manner that resulted in a manifest miscarriage of justice. That's precisely what he did in the California Court of Appeal. That's the standard he overcame for that state evidentiary error, for the court to find that, to be able to find that there was a state evidentiary error. Counsel, just to clarify, the thing that you said about her claiming the shotgun shells, that's what she said, what, weeks or months later when she and Royale together are stopped in Arizona? Correct, Your Honor. Okay, and that's what she tells the Arizona police? Yes, Your Honor. All right. Yes, Your Honor. When she's with Royale? When she's with Royale, yes, Your Honor. And the testimony about her wanting immunity and all that, yes, they came in, but they also came in, they had an expert who came in and said, you know, people who are sexually exploited for money, they usually have lack of memory and they have fear of their pimp, if you will. So that was rebutted. That testimony was not as compelling, the lawyer coming in. Okay. Okay, thank you very much for your presentation.  We thank both counsel for their helpful briefing and arguments. This matter is submitted. Thank you, Your Honor.
judges: Boggs, FRIEDLAND, BRESS